Good morning, Your Honor, and may it please the Court, William Paul Melcher for the appellate, Mr. Nieto. And on behalf of my learned co-counsel, we thank you for taking this case up. With respect to the certified issue, that being, in this case, whether the trial court's admission of the investigating detective's opinions at trial rendered Mr. Nieto's trial fundamentally unfair. We believe in this case, under the circumstances, it certainly did, and the opinions below ran contrary to clearly established federal law, as opined by the Supreme Court, or at least an unreasonable application of that law. The Supreme Court has made clear that evidentiary errors can constitute a due process violation, and in addition to the case of Dowling v. U.S. that we cited in our brief, I'd like to also draw the Court's attention to two other Supreme Court cases, the first being Dawson v. Delaware, and that's cited at 503 U.S. 159. In addition to Lisemba v. California, that's at 3- These are new cases, Your Honor. Well, you have to fill out a gum sheet. Are these cases not cited in your brief? They were not cited in our opening brief. Don't we have rules that require you to advise counsel on the other side and us that these are new cases? Actually, I believe Dowling does cite- Dowling cited. And I believe the additional case, the Ninth Circuit case of U.S. v. Harbor, I believe cites at least Lisemba v. California, in addition to a case that I believe is very much on point with this case, and that is Parker v. Gladden. I just wanted to, even though I didn't specifically cite to those cases in the opening brief, I wanted to draw the Court's attention to those, in that the standard is very clearly set forth in those cases that, again, evidentiary errors can constitute a due process violation, and the test that we're- They can. They can. And the test being the standard of review is whether the evidence is so extremely unfair that its admission violates fundamental conceptions of justice. I think it's clear, and it was not argued below by any court, that the admission of the Detective Enyart's opinion testimony that went directly to the guilt or innocence- It was not argued below, and it wasn't argued in the state habeas corpus. How can we consider- Let me rephrase that. It was not disputed that the testimony was inadmissible. It was error to admit that Detective Enyart's testimony- Of course it was disputed. The whole issue arose when, on cross-examination, the defendant's attorney asked the detective, Do you think that Mr. Nieto was set up? That was asking for his opinion. It opened the door big and wide. That was a stupid question. It was a very stupid question. But I think my point was this, that the California Supreme Court's, the California Court of Appeals, and I believe the magistrate in this case, both agreed that allowing the testimony, the opinion testimony of Detective Enyart was error. However, the California Court of Appeals found- Whose error? The trial court's error. Was there an objection? There was an objection. There was an objection by the person who had asked the question and opened the door? There was an objection. Well, I think both sides very clearly set forth the record that this is not in dispute at all. We do have the question, as Your Honor pointed out, where the defense counsel did ask a stupid question. That being, do you think that Mr. Nieto was set up? A very ambiguous question. I'm not sure what the attorney meant. Not at all. Not ambiguous at all. This was a shooting that either was done by one person or another, the driver or the passenger. And the idea that the wrong person was being prosecuted admits of the idea that he was set up. Well, I'm not sure what the defense counsel was referring to. Obviously, that's not in the record. Maybe she wasn't either. Your objection isn't to the answer to that question anyway. Not at all. Your objection is to the answer to the question. And there's a further follow-up question that I think would have been the pertinent question to ask, and that is when the prosecution finally asked Detective Enyard, do you believe that was there any evidence that he was set up in this case? And the answer is no. But, yes, Your Honor, you're correct. It's the middle part that we have the problem with, and that is the opinion from the detective that, well, first, the question that was objected to, in your 20 years of experience, has there been evidence that's come to you where somebody has been charged with a crime, but you later on find that the defendant is innocent? That's where the objection was interposed. Now, there was a sidebar where the court said, well, I will allow you to just confine your question with regard to this case. So the follow-up question to that was, would you be sitting here if you believe Mr. Nieto was set up? The answer being no. What would you do? Now, what exactly is shocking about that answer? I mean, we had a reference in the last case, or maybe the case before. They were together after a while. But it's not exactly a news bulletin that a police detective testifying at a trial of a criminal defendant, somebody charged with a crime, is going to say, you know, I believe we got the right guy. Well, I think at some point it becomes an inadmissible opinion testimony. Oh, no question. It's inadmissible. But you've already told us that's not all. The fact that there's an evidentiary problem doesn't provide the basis for federal habeas corpus. The question is whether it's so tainted the proceedings as a violation of due process. And I have to say, the news that a police detective thinks the defendant being charged with a crime is guilty doesn't strike me as being a real news flash. Well, obviously not. But the answer to that question. Well, if it's not then, how is it going to be so prejudicial? How is it going to taint the trial so much that you can't get a fair trial, particularly given the trial judge's instruction here to disregard the opinion? Well, I think if we allowed the investigating detectives to opine as the ultimate guilt or innocence of each defendant, I think that would obviously make the rest of the trial a little superfluous, especially with regard to the. . . Do you really think the jury is wondering whether the detective thinks they got the right guy? I don't believe that the jury thinks that the detective would be there testifying if he believed he was either set up or that there was exculpatory evidence or. . . There are good reasons why we don't allow that kind of evidence. But this isn't an evidentiary appeal. This is a due process appeal. And you've got to show it taints the trial. And that's where I run into a wall. Right. This shouldn't have happened. It shouldn't have happened. But it did happen. Right. What leads us to justify a conclusion that it so tainted the trial it couldn't be a fair trial? I mean, I don't think anybody was surprised by the answer that he gave, maybe the defense attorney for asking the stupid question in the first place. But. . . Right. Okay. Well, why should we think this taints the trial? I think the first answer that we discussed, that is, in your 20 years of experience, has there been any evidence that has come to light that a defendant is not guilty? What would you do with that evidence? Well, I would basically come to court to tell you that this defendant is being unjustly tried. So the two answers in conjunction, I think it really puts it out of bounds. Wyatt, is it your point that the detective is using his integrity to vouch for his opinion? That's what we argued in our opening brief, and I believe that to be true. But vouching as a basis for due process violations has up to now been only applied where the attorney vouches in final argument for the veracity of a witness. And we're under AEDPA, so we have to have a Supreme Court holding that says a witness vouching for a witness is a violation of due process. What is that case? Well, the only case that I could find that is fairly on point is the Parker v. Gladden decision, and that is cited by this court's opinion in U.S. v. Harbor. Did Parker v. Gladden involve a witness vouching for his own testimony? It did not. It involved a bailiff who stated to the jury, oh, that wicked fellow, he is guilty. And the court made the point that the – You understand, counsel, we had a difference, a big difference. We have AEDPA. Maybe you better go on to some other issues. You know, who asked that question that started all this? Defense counsel did open the door, but we have to ask ourselves what did he open the door to? How long did he – was this his first trial? Oh, I don't know if that's in the record, Your Honor. Just tell me off the record. No, I don't even know off the record. I couldn't even make up the answer. I'll take some satisfaction in the fact that you weren't the attorney. I was not the attorney. Okay, thank you. You know, I made a mistake like that once with a police officer, and I got hit right between the eyes. I never made that mistake again. You know, so it was a good lesson. But you may have asked yourself, Your Honor, if you open that door, what did you open the door to, and when does the door close? I didn't. You didn't ask that question. I didn't think about doors or anything. I thought it was something stupid, you know. But the additional point to keep in mind in this case is not – You're beating a dead horse. Okay. I'll move on except to say, of course, in this case we do have the court's instruction, which explicitly allows the jury to entertain the opinion of the detective. And I think that makes it a little bit different. With regard to that particular case, the judge set out, disregard everything involving this 20 years of experience, all the other cases. And prosecutor, a gutsy move and maybe a foolish move, the prosecutor asked another question after that related to this case. And that probably should have been out of bounds, too, but I guess the trial judge figured that's the response to the question. That's the invited air talk. But that's where I focus my question. And I don't want to beat a dead horse, but I think we have the same problem whichever question we're focusing on. Nobody is much surprised by the answer. Well, I was a little bit surprised that the trial court in its – well, I loosely refer to it in the brief, in the opening brief, as a curative instruction. I don't believe it was curative at all. And it certainly wasn't limiting, and it wasn't really even cautionary. And that is, I'm allowing these opinions. I'm allowing you to take into account the fact that the detective is saying, this defendant is guilty, more or less. And I think that's where it gets us to the due process violation under AEDPA. Your time is up. Thank you, Your Honor. If I may have perhaps one minute. All right. May it please the Court. My name is Deputy Attorney General Eric Reynolds for Respondent. Your Honor, the district court's denial of appellant's habeas petition should be affirmed because the court correctly found that the California court's denial of appellant's due process claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Appellant has not cited any Supreme Court authority holding that the admission of allegedly improper testimony, when invited by defense and then cured by a judge's curative instruction, is a violation of due process. Absent such authority, the California Court of Appeals' decision was not an unreasonable application of clearly established federal law. Appellant contends that the testimony that the detective offered that appellant was set up in his case rendered his trial fundamentally unfair. The district court gave four reasons why that testimony did not result in fundamental unfairness. First, and it's what the court already has spent a lot of time with, is the context in which the testimony was elicited. It was in direct response to a defense's question on cross-examination. It was the defense that first asked the detective his opinion as to whether or not the defendant was set up. The court then allowed the prosecution limited questions to follow up on the detective's response that I don't know, basically left that answer hanging. The prosecution asked a couple of targeted questions to follow up on that response, whether or not there was evidence of the defendant being set up, and if there was such evidence, what would the detective have done in that case. The detective didn't come out and say, I think the defendant is guilty here. He didn't offer an opinion on the defendant's guilt. He just merely followed up on the defense question on whether or not there was evidence the defendant was set up. So there's the context of the question, basically, that was invited by the defense. The nature of the exchange was extremely limited. It amounted to a couple of prosecution questions in the whole of the detective's testimony. The court gave an immediate curative instruction. And then based on the- I don't think it's much of a curative instruction to say you can consider the opinion. Well, it went beyond that, Your Honor. Instead, I'm admitting the detective's testimony. However, you are ultimately to decide, beyond a reasonable doubt, whether the defendant is guilty. And basically, his second part of the statement says disregard it. I'm admitting it, but disregard it, because you need to decide. So you can hear the opinion, but you've got to make up your mind on all the evidence, right? Correct. Beyond a reasonable doubt. So this is part of the evidence. It's admitted as part of the evidence, yes. Yes. However, the court limited its consideration. Basically, it's not dispositive of part of the evidence. The court said, you know, you can factor it in, but it's up to you to decide beyond a reasonable doubt. In other words, your argument doesn't rise to the level of a constitutional violation that's already part of established Supreme Court law. Correct. Okay. Yes. That's all you need to say. So I think, you know, we've gone through your briefs and all that. And, okay, you can have a seat. Thank you. Just briefly, Your Honor, I think, as mentioned in our opening brief, this court's decision in U.S. v. Harbor is very instructive in this case in that the detective's opinion is presumed to be prejudicial. It's inherently prejudicial. And I believe that then the burden then shifts to the state to show otherwise that it did not have an injurious effect on the verdict. Why? Why do we presume it to be prejudicial? As I believe it's Harbor or it might be Dubria, in our opening brief, at least this court has mentioned several times that police officers' testimony carries a special aura of trustworthiness. That's a direct criminal appeal. I beg your pardon? That's a direct criminal appeal. That's where we as the trial court, as the direct appellate court, as the California Court of Appeal, could opine with regard to evidentiary questions. We're here on habeas. We're looking at a due process standard, which you've already acknowledged is a whole lot higher. Right. And I guess that gets us back to the issue that we kind of already beat to death. Thank you very much, Your Honor. Thank you. Thank you. Judge Ferguson, we appreciate very much the reverence you paid to these awful events of some 69 years ago when we opened the court this morning, especially well taken by those who had friends and relatives who suffered casualties at Pearl Harbor and, of course, the barracks, Schofield Barracks. And, of course, we also congratulate the court on its longevity also being another anniversary to this day. You know, it's four score and seven years. Remember that. That's right. Four score and seven and 60 plus nine. Are you a lawyer? Yes, I am. Well, Your Honor, you know me. I know. Tell me. I know you.  You probably beat up on me once in a while. Thank you. I was wondering what you thought of my son here. Now, this is one of the two sons. Remember, you asked him last time I appeared before you. He asked me about my sons and how you met one. He's a good lawyer. Thank you so much. Good lawyer. You trained him well. And I see where you're a very nice father. You came up and gave him a glass of water to drink. Very kind. Yeah. So, no, he's got tremendous... How old is the boy? Oh, he's forty... Three, four. Forty-four. Forty-four now. Well, he's just getting started, you know. Yes. No, he's on the road to great success, and I'm sure he's already achieved that. Thank you so much. Thank you. Bye-bye now. Bye. We're going to take a brief recess. This court will stand in a short recess. Thank you.
judges: Pregerson, Clifton, Bea